695 A.2d 722

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
KEITH SAUNDERS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 30, 1997—Decided June 23, 1997.

Before Judges SHEBELL, P.G. LEVY and BRAITHWAITE.

*Susan L. Reisner,* Public Defender, attorney for appellant (*Barbara A. Hedeen,* Assistant Deputy Public Defender, of counsel and on the brief).

*Peter Verniero,* Attorney General, attorney for respondent (*Michael J. Williams,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

Following a jury trial, defendant appeals from his conviction of third-degree stalking, *N.J.S.A.* 2C:12–10c. He was sentenced to a custodial term of five years. On appeal, he contends:

*POINT I*

BECAUSE IT CONTAINS NUMEROUS UNDEFINED PHRASES, THE STALKING STATUTE, *N.J.S.A.* 2C:12–10, IS VAGUE AND OVERBROAD IN

VIOLATION OF THE DUE PROCESS CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS. (Not raised below)

*POINT II*

MR. SAUNDERS' CONVICTION OF THIRD DEGREE STALKING WAS AGAINST THE WEIGHT OF THE EVIDENCE AS THERE WAS NO PROOF THAT HE "REPEATEDLY FOLLOWED" THE COMPLAINANT, THAT HE INTENDED TO ANNOY HER, AND THAT ANY ACTIONS HE MIGHT HAVE ENGAGED IN WERE "IN VIOLATION OF AN EXISTING COURT ORDER PROHIBITING THE BEHAVIOR." (Not raised below)

*POINT III*

REVERSAL IS REQUIRED BECAUSE THE TRIAL JUDGE FAILED TO DEFINE CRITICAL ELEMENTS OF THE OFFENSE AND ERRONEOUSLY DEFINED AN ESSENTIAL ELEMENT, THAT IS, THAT MR. SAUNDERS HAVE ACTED WITH THE INTENT TO ANNOY THE COMPLAINANT. (Partially raised below)

*POINT IV*

EVIDENCE THAT MR. SAUNDERS HAD WATCHED MS. WILLIAMS IN PRIOR YEARS AND THAT HE HAD AGREED IN 1989 "NEVER TO HARASS NURSE WILLIAMS AGAIN" WAS SO OVERWHELMINGLY PREJUDICIAL THAT ITS ADMISSION DEPRIVED SAUNDERS OF A FAIR TRIAL.

*POINT VI*

IN SENTENCING MR. SAUNDERS TO THE MAXIMUM TERM ALLOW-ABLE UNDER THE CODE, THE TRIAL COURT ABUSED ITS DISCRE-TION AND MISAPPLIED THE SENTENCING GUIDELINES.

We reject defendant's contentions and affirm.

I

At trial, the State produced the following evidence. The victim, Javonda Williams, a registered nurse who worked at St. James Hospital in Newark, had known defendant since 1973. Their friendship ended the same year. Defendant and Williams were never romantically involved. Nonetheless, defendant would re-peatedly stand at the gate of the hospital's employee parking lot when Williams arrived for work at 7:15 a.m. and when she left work at about 4:00 p.m. During these times, defendant would stand and watch Williams. On one occasion in 1988, as Williams was going into the hospital, defendant "grabbed [her] by the arm" and "used profanity." Williams was able to enter the building and called security.

On May 20, 1989, Williams' children saw defendant in the hospital cafeteria, and they called Williams and reported defendant's whereabouts. Williams then notified security personnel, who removed defendant from the cafeteria. They also questioned defendant about his actions, and he signed a statement stating:

> I declare I will not come on St. James premises, 155 Jefferson Street, Newark, N.J. Also I declare never to harrass [sic] Nurse Williams, JaVonda again. I know should I return to these premises I will be sent to jail for any of these act [sic]. Statements above on my free will.

In 1993, defendant stood outside the hospital and watched Williams on at least thirteen specific dates. Defendant's actions frightened Williams, and she reported his conduct to the police. On August 30, 1993, while standing "at the emergency exit driveway where [Williams] had to cross the street everyday," defendant mumbled something incoherent to Williams as he attempted to approach her. Williams was "afraid and frightened" by defendant's conduct.

On March 21, 1994, defendant sent Williams a letter. The letter listed defendant's name, address, age, telephone number, religion, and social security number. He sent a similar letter to Williams in 1995. Following defendant's telephone number, the letter stated, "ask for me."

On January 13, 1995, defendant entered a guilty plea to a charge of harassing Williams. The judgment of conviction ordered that he avoid all contact with Williams as a condition of a suspended sentence.

In June and July 1995, defendant continued to stand and watch Williams. On July 26, 1995, he approached the passenger side of Williams' vehicle. He got within five feet of her vehicle, which frightened Williams so much that she drove through a red light. Later that day, after work, defendant was standing and watching Williams. Williams then reported defendant's conduct to the police.

Defendant testified and denied that he intended to harass, frighten, or annoy Williams. He explained that he frequented the

neighborhood to visit with co-workers of his father, who died in 1988. He also stated that he was in the area on several occasions because he had legitimate business at the hospital.

Defendant also contended that he had known Williams since 1974 and that she was his former girlfriend. He claimed that the relationship ended in 1977. Further, he testified that Williams attacked him in 1980 and cut him with a knife. On rebuttal, Williams denied that this incident occurred.

Defendant acknowledged that he signed the 1989 agreement not to enter the hospital or harass Williams. He testified that he sent the letters to Williams to correspond with her, not to harass or annoy her.

## II

In point one, defendant contends that the stalking statute, *N.J.S.A.* 2C:12–10, violates both the Federal and New Jersey Constitutions because it is vague and overbroad. We note that this challenge was not raised below. *See R.* 2:10–2.

Defendant was convicted of violating the original version of *N.J.S.A.* 2C:12–10,[1] the pertinent parts of which read as follows:

a. As used in this act:

(1) "Course of conduct" means a knowing and willful course of conduct directed at a specific person, composed of a series of acts over a period of time, however short, evidencing a continuity of purpose which alarms or annoys that person and which serves no legitimate purpose. The course of conduct must be such as to cause a reasonable person to suffer emotional distress. Constitutionally protected activity is not included within the meaning of "course of conduct."

(2) "Credible threat" means an explicit or implicit threat made with the intent and the apparent ability to carry out the threat, so as to cause the person who is the target of the threat to reasonably fear for that person's safety.

b. A person is guilty of stalking, a crime of the fourth degree, if he purposely and repeatedly follows another person and engages in a course of conduct or makes a credible threat with the intent of annoying or placing that person in reasonable fear of death or bodily injury.

---

[1] We take notice that the stalking statute has been amended effective June 20, 1996, by *L.* 1996, *c.* 39, § 1.

c. A person is guilty of a crime of the third degree if he commits the crime of stalking in violation of an existing court order prohibiting the behavior.

d. A person who commits a second or subsequent offense of stalking which involves an act of violence or a credible threat of violence against the same victim is guilty of a crime of the third degree.

e. This act shall not apply to conduct which occurs during organized group picketing.

[*Ibid.*]

Here, defendant was charged with a course-of-conduct violation of the statute committed after a prior court order precluded him from following the victim.

## A.

■ Declaring a statute unconstitutional is a serious matter that courts may not lightly undertake. *See State v. Jones*, 198 *N.J.Super.* 553, 561, 487 *A.*2d 1278 (App.Div.1985). The United States Supreme Court has outlined the analytical process as follows:

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

[*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 *U.S.* 489, 494–95, 102 *S.Ct.* 1186, 1191, 71 *L.Ed.*2d 362, 369 (1982) (footnotes omitted).]

The Court went on the explain that depending on the type of law, the Constitution tolerates some degree of vagueness, requiring less strict scrutiny of economic regulations and more careful scrutiny of criminal laws. *See id.* at 498–99, 102 *S.Ct.* at 1193, 71 *L.Ed.*2d at 371–72. And, it added, vagueness may be mitigated by a scienter requirement, especially when a court examines a challenge claiming that the law failed to provide adequate notice of the proscribed conduct. *See id.* at 499, 102 *S.Ct.* at 1193, 71 *L.Ed.*2d at 372.

## B.

Overbreadth is a doctrine rooted in substantive due process principles that addresses the statute's reach but not its clarity. *See State v. Morales*, 224 *N.J.Super.* 72, 79, 539 *A.2d* 769 (Law Div.1987). Overbreadth exists when a statute infringes or inhibits the First Amendment rights of the complainant or others. *See Bates v. State Bar of Arizona*, 433 *U.S.* 350, 380, 97 *S.Ct.* 2691, 2707, 53 *L.Ed.*2d 810, 833–34 (1977).

We conclude that defendant's argument that the former stalking statute is overbroad fails. We note that the reasoning applied in evaluating whether New Jersey's harassment statute, *N.J.S.A.* 2C:33–4, was overbroad is instructive in analyzing defendant's claim. *See State v. Hoffman*, 290 *N.J.Super.* 588, 676 *A.2d* 565 (App.Div.1996); *State v. Finance American Corp.*, 182 *N.J.Super.* 33, 440 *A.2d* 28 (App.Div.1981). *See also State v. Mortimer*, 135 *N.J.* 517, 641 *A.2d* 257 (finding that the portion of New Jersey's harassment statute that enhanced the punishment for harassment when the perpetrator's actions were motivated by bias was not overbroad because at most the statute had a minimal effect on protected expression), *cert. denied*, 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L. Ed.*2d 351 (1994).

An individual may be guilty of harassment, a disorderly persons offense, if, "with purpose to harass another," he:

    a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

    b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

    c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

    A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.

    d. A person commits a crime of the fourth degree if in committing an offense under this section, he acted with a purpose to intimidate an individual or group of individuals because of race, color, religion, gender, handicap, sexual orientation or ethnicity.

    [*N.J.S.A.* 2C:33–4.]

Stalking has been characterized as behavior exceeding harassment but not yet advanced to assault or other more serious crimes that involve overt threats or physical contact. *See* Cannel, *New Jersey Criminal Code Annotated,* Comment to *N.J.S.A.* 2C:12–10 (1996–97); Colleen P. Flynn, *The New Jersey Antistalking Law: Putting an End to a "Fatal Attraction",* 18 *Seton Hall Legis. J.* 297, 299 (1993). The language of the harassment and the former stalking statute are similar, addressing behavior likely to cause annoyance, alarm, or alarming conduct; both statutes require the purpose to alarm or annoy. *See N.J.S.A.* 2C:12–10; *N.J.S.A.* 2C:33–4.

As previously stated, the test for determining overbreadth is whether the statute "reaches a substantial amount of constitutionally protected conduct." *Mortimer, supra,* 135 *N.J.* at 530, 641 *A.*2d 257 (quoting *Houston v. Hill,* 482 *U.S.* 451, 458, 107 *S.Ct.* 2502, 2508, 96 *L.Ed.*2d 398, 410, *appeal dismissed* and *cert. denied,* 483 *U.S.* 1001, 107 *S.Ct.* 3222, 97 *L.Ed.*2d 729 (1987)). In *Mortimer, supra,* our Supreme Court held that subsection d of the harassment statute was not unconstitutionally overbroad because it had a minimal effect on speech and specifically forbade harassing conduct. 135 *N.J.* at 531, 641 *A.*2d 257. The Court's decision was consistent with our earlier determination that so long as the harassment statute required a specific intent to harass the victim, it would pass constitutional scrutiny as a reasonable restriction on the manner in which speech was expressed regardless of its content. *See Finance American, supra,* 182 *N.J.Super.* at 39–40, 440 *A.*2d 28. Freedom of speech does not encompass a right to abuse or annoy another person intentionally. *See id.* at 40, 440 *A.*2d 28.

Defendant's testimony at trial sought to establish legitimate purposes for his repeated presence near the victim, such as shopping at the hospital's pharmacy, visiting the hospital's emergency room, and visiting the workplace of his deceased father, all of which were allegedly unrelated to the victim's presence. On appeal, however, defendant concedes that he watched the victim

from various locations and followed her from the parking lot to the hospital, and he contends that his actions are protected under the First Amendment as "expressive activities." Yet, "nonverbal expressive activity can be banned because of the action it entails...." *R.A.V. v. City of St. Paul,* 505 *U.S.* 377, 385, 112 *S.Ct.* 2538, 2544, 120 *L.Ed.*2d 305, 319 (1992).

Moreover, his challenge goes to the heart of the purpose of stalking laws: to intervene in repetitive harassing or threatening behavior before the victim has actually been physically attacked. *See* Flynn, *supra,* 18 *Seton Hall Legis. J.* at 300–02; Assembly Judiciary, Law and Public Safety Committee Statement, Senate, No. 256, *L.* 1992, *c.* 209.

In *Finance American, supra,* we declined to find the harassment statute overbroad based on hypothetical situations that might establish overbreadth. 182 *N.J.Super.* at 39, 440 *A.2d* 28. We must determine whether a statute is overbroad on a case-by-case basis, analyzing whether a litigant's First Amendment rights have been violated by applying a particular statute. *See ibid.* In evaluating the present case, we decline to resolve the issue of overbreadth based on defendant's hypothetical about a private detective or other imagined sets of facts. We conclude that the statute is not overbroad when applied to defendant's conduct towards Williams.

### C.

Once a court has examined an overbreadth challenge and determined that the statute is not overbroad, the court must then consider whether the statute is facially vague, striking down the statute only if it is "impermissibly vague in all of its applications." *See Village of Hoffman Estates, supra,* 455 *U.S.* at 494–95, 102 *S.Ct.* at 1191, 71 *L.Ed.*2d at 369. Vagueness is "essentially a procedural due process concept grounded in notions of fair play." *State v. Lashinsky,* 81 *N.J.* 1, 17, 404 *A.2d* 1121 (1979). A criminal statute is not impermissibly vague so long as a person of ordinary intelligence may reasonably determine what conduct is

prohibited so that he or she may act in conformity with the law. *See Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 118, 462 *A.*2d 573 (1983). Similarly, the statute must guide law enforcement personnel sufficiently to prevent arbitrary application. *See State v. Lee,* 96 *N.J.* 156, 166, 475 *A.*2d 31 (1984). Even if behavior is not susceptible to precise definition, the statute may be constitutional. *See ibid.* "Possible vagueness of the statute with respect to other behavior does not permit one whose conduct is clearly prohibited to act with impunity." *Id.* at 167, 475 *A.*2d 31. In the words of the United States Supreme Court:

> A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.
>
> [*Boyce Motor Lines v. United States,* 342 *U.S.* 337, 340, 72 *S.Ct.* 329, 330–31, 96 *L.Ed.* 367, 371 (1952) (footnote omitted).]

Analysis of constitutional vagueness is not "a linguistic analysis conducted in a vacuum" but requires consideration of the questioned provision itself, related provisions, and the reality in which the provision is to be applied. *See In re Suspension of DeMarco,* 83 *N.J.* 25, 37, 414 *A.*2d 1339 (1980). A statute is facially or perfectly vague if "there is no conduct that it proscribes with sufficient certainty." *State v. Cameron,* 100 *N.J.* 586, 593, 498 *A.*2d 1217 (1985). To be vague "as applied," the law must not clearly prohibit the conduct on which the particular charges were based. *Ibid.; see also Finance American, supra,* 182 *N.J.Super.* at 42, 440 *A.*2d 28. Defendant contends that the former *N.J.S.A.* 2C:12–10 is unconstitutionally vague both facially and as applied.

As previously noted, a defendant whose conduct is clearly prohibited may not assert the hypothetical rights of others. *See Village of Hoffman Estates, supra,* 455 *U.S.* at 494–95, 102 *S.Ct.* at 1191, 71 *L.Ed.*2d at 369; *Jones, supra,* 198 *N.J.Super.* at 560–61,

487 *A.*2d 1278. Thus, a statute's constitutionality is necessarily determined by specifically-charged conduct. *See, e.g., United States v. National Dairy Products Corp.,* 372 *U.S.* 29, 33, 83 *S.Ct.* 594, 598, 9 *L.Ed.*2d 561, 565–66 (1963).

Defendant bases his claim of vagueness on the statute's failure to define adequately the words "annoy," "annoyance," "alarm," "constitutionally protected activity," and "following." As was found in the cases examining the harassment statute, each of these phrases can be deemed vague when considered in isolation. *See Mortimer, supra,* 135 *N.J.* at 535, 641 *A.*2d 257; *Finance American, supra,* 182 *N.J.Super.* at 41, 440 *A.*2d 28. Analyzing the harassment statute, we concluded that the words "annoyance" and "alarm" must be construed together as prohibiting behaviors "which are alarming or which cause annoyance of some moment, not those which are merely nettlesome." *Hoffman, supra,* 290 *N.J.Super.* at 598, 676 *A.*2d 565. The statutory target, we reasoned, was behavior annoying enough to "cause a reasonable person fear and apprehension." *Ibid.; see also State v. Lee,* 82 *Wash.App.* 298, 917 *P.*2d 159, 166(finding that the term "follows" was not unconstitutionally vague since "persons of ordinary intelligence would understand that 'following' includes deliberately and repeatedly traveling to a location where another person routinely goes in order to see or watch that person"), *rev. granted,* 130 *Wash.*2d 1016, 928 *P.*2d 415 (1996); *State v. Fonseca,* 670 *A.*2d 1237, 1240 (R.I.1996)(finding that the phrase "repeatedly follows and harasses" did not render statute unconstitutionally vague because a person of ordinary intelligence could understand what behavior is prohibited).

■ Moreover, defendant's contention that the stalking statute is vague fails because the statute requires a specific intent. The phrases that defendant contends are vague specifically state that the defendant must intend either to annoy or place that person in reasonable fear of death or bodily injury. *See N.J.S.A.* 2C:12–10b. We found in *Finance American, supra,* that the specific intent required in the harassment statute modified any phrases that

could possibly be deemed vague, such as "offensively coarse
language" and "any other manner likely to cause annoyance or
alarm" so that they were not vague. 182 *N.J.Super.* at 41, 440
*A.*2d 28. Accordingly, the specific intent required in the stalking
statute under which defendant was convicted clearly indicates
what type of conduct is prohibited. Therefore, defendant's vague-
ness challenge fails.

■ Here, the jury concluded that defendant had the requisite
purpose to annoy or cause reasonable fear of death or serious
bodily injury. He was repeatedly warned and finally ordered by
the court in January 1995 to cease contact with the victim, and
defendant must have known that his behavior would annoy the
victim or put her in fear of injury. *Cf. Finance American, supra,*
182 *N.J.Super.* at 41–42, 440 *A.*2d 28 (finding that after the
perpetrator learned that his conduct was unwelcome, he necessari-
ly had to have known that his calls satisfied the language requir-
ing extreme inconvenience and action likely to annoy victim). We
conclude that the former stalking statute is not impermissibly
vague.

Although we do not address the constitutionality of the amended
statute here, the new language in the statute outlaws specific
conduct, such as "repeatedly maintaining a visual or physical
proximity to a person" or "written threats or threats implied by
conduct." *N.J.S.A.* 2C:12–10a(1). Even though defendant alleges
that the former stalking statute is vague because it did not define
certain words and phrases, we note that the amended statute is
not unconstitutionally vague based on defendant's argument. It is
clear what type of conduct is proscribed. *See Town Tobacconist,
supra,* 94 *N.J.* at 118, 462 *A.*2d 573.

### III

Defendant next contends that his conviction was against the
weight of the evidence because the State did not prove that he
followed the victim, that he intended to annoy her, or that his
actions were in violation of an existing court order. The State

responds that because defendant failed to move for a new trial below, this issue is not cognizable on appeal.

An appellate court will not consider an argument that a jury verdict is against the weight of the evidence unless the appellant moved for a new trial before the trial court on that ground. *See R.* 2:10–1; *State v. Perry,* 128 *N.J.Super.* 188, 190, 319 *A.*2d 505 (App.Div.1973), *aff'd,* 65 *N.J.* 45, 319 *A.*2d 474 (1974).

Although defendant's claim is barred procedurally, it also lacks substantive merit. A trial court may only set aside a jury verdict as against the weight of the evidence if, considering the jury's opportunity to assess the witnesses' credibilities, a manifest denial of justice clearly and convincingly appears. *See R.* 3:20–1. The jury is free to believe or disbelieve a witness's testimony. *See State v. Reyes,* 50 *N.J.* 454, 464, 236 *A.*2d 385 (1967). On a motion for a new trial, the objective is not to second-guess the jury but to correct the injustice that would result from an obvious jury error. *See State v. Balles,* 47 *N.J.* 331, 337, 221 *A.*2d 1 (1966), *appeal dismissed* and *cert. denied,* 388 *U.S.* 461, 87 *S.Ct.* 2120, 18 *L.Ed.*2d 1321 (1967). Here, no such error occurred. The evidence of defendant's guilt of stalking was overwhelming.

## IV

Defendant also argues that the jury instructions failed to include definitions of critical elements of stalking. We have carefully reviewed the charge and are satisfied that the portion of the charge objected to at trial and that portion raised as plain error do not warrant reversal. Here, no error occurred that was "clearly capable of producing an unjust result." *R.* 2:10–2.

As to the remaining issues raised by defendant, we have carefully reviewed the record and, in light of applicable law, conclude that the contentions are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(2).

Affirmed.