**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3552-21

FAITH HAINES,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted February 28, 2024 – Decided April 3, 2024

Before Judges Currier and Susswein.

On appeal from the New Jersey Department of Corrections.

Faith Haines, appellant pro se.

Mathew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Leah E. Traub, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Petitioner, Faith Haines, appeals from a final agency decision by the Department of Corrections (DOC) affirming the disciplinary hearing finding she committed sexual harassment against another inmate at Edna Mahan Correctional Facility. Haines argues she was denied her due process right to cross-examination and confrontation. She also contends the sexual harassment regulation, N.J.A.C. 10A:4-4.1(a)(3)(iv), is unconstitutionally vague and overbroad as applied in this case. After carefully reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. Haines and Taralyn Buckner are inmates at Edna Mahan Corrections Facility. On March 26, 2022, Buckner filed a grievance stating:

> Hi [I]'m writing because [I] have a[n] issu[]e with inmate FAITH HAINES. [I] have been relocated to cottage because of the move and . . . inmate FAITH HAINES is starting a lot of pro[blem]s down here with me and other inmates . . . me and the other inmates like it here and we be talking and FAITH HAINES be coming and starting with us is there any way she can be moved somewhere else [I] already talked to lots of officers and [sergeants] and [lieutenants] about her[] thank you so much[.]

The record consists of several letters Haines sent Buckner. A letter dated March 21, 2022 states "we can kiss passionately. . . . " and "[d]o you ever think

2

about the days we kissed, days where I touched and sucked your private areas. .

. ."  A March 22, 2022 letter states, "[y]ou could always shut me up by putting

me up against the wall or pushing me on the bed getting on top of me reminding

me whose woman I am."

In another March 22, 2022 letter, Haines asked Buckner, "how am I a

threat to you?"  This letter also stated,

> we need time by ourselves without nosy people around
> so we can flirt and talk about relationship related things
> since you don't want your friends/sister to know about
> us.  Also let them both know that I don't bother you and
> that you're ok around me that they don't need to
> bodyguard you.

In a different letter from that date, Haines stated "I really. . . truly love

you plus want a future with you.  Apparently it seems you don't want a future

with me.  We need to talk a[n]d you need to get . . . them to back off of me."

Buckner filed additional grievances on April 7, 2022, April 11, 2022,

April 14, 2022, April 15, 2022, and June 6, 2022.  The June 6, 2022 grievance

states:

> [H]I on 6-6-22 . . . at approximately 1:15 p.m.  [F]aith
> [H]aines was walking out of north hall while [I] was
> sitting on the benches.    [S]he called me a
> "dumbB***H" and kept trying to put her hands on me.
> I tried to resist her but she was extremely p[er]sist[e]nt.
> She sat down next to me and began saying that she was
> telling people that she and I were girlfriends she

3

A-3552-21

continued to harass me further with, physical interactions. [S]he began touching my face, then my shoulders. [S]he was hugging me. [S]he kissed me three times and [I] was trying desperately to get her to stop. [S]he finally stopped after [officer] [V]ega came out around 2:00 p.m. and forced her to leave. I believe it was all caught on camera. [I] have rep[e]atedly told custody that she has and you guys how she is harass[ing] me in this matter. [M]ay [I] please get a keep separate issued so she leaves me alone [I']m very pissed off right now thank you.

On June 3, 2022 Investigator R. Cora filed a disciplinary report against Haines charging her with violating prohibited act .057 (sexual harassment).[1] A disciplinary hearing was held June 7, 2022. Haines requested and received a counsel substitute. According to the "adjudication of disciplinary charge" form, Haines was "offered" the ability to confront/cross-examine adverse witnesses but "declined." Haines's counsel substitute signed the "adjudication of disciplinary charge" form.

Haines pled not guilty, contending she and Buckner were in a romantic relationship from February 27, 2022 until June 6, 2022. The evidence presented at the hearing consisted of reports from Cora, emails, letters, and witness

---

[1] Prohibited act .057 provides, "[s]exual harassment involves repeated and/or unwelcomed sexual advances, request for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature." N.J.A.C. 10A:4-4.1(a)(3)(iv).

statements, Buckner's messages and statements, and Haines's mental health records.

Two inmates gave verbal statements at Haines's request. One inmate stated she knew Haines and Bucker were in a relationship at one point and saw them pass each other letters and food. However, she believed the relationship ended, adding "inmate Haines can be a bit much and overbearing in trying to repair the relationship that [inmate] Buckner no longer wishes to be in." The other inmate stated Haines and Buckner were together at one point, but did not know whether they were still in a relationship.

The Disciplinary Hearing Officer (DHO) determined the evidence supported a determination of guilt, finding Haines "has been sexually harassing [Buckner] via written communications." The DHO imposed a fifteen-day loss of phone, commissary, email, and media download privileges. The hearing officer noted Haines previously received a disciplinary charge in February 2022.

Haines appealed, arguing she and Buckner were in a "convivial relationship," that infraction .057 is unconstitutionally vague, and the DHO denied Haines the opportunity to confront/cross-examine witnesses. The DOC upheld the decision of the DHO and concluded the sanctions were proportionate to the offense.

This appeal follows. Haines raises the following contentions for our consideration:

POINT I

THE FINDING OF GUILTY SHOULD BE SET ASIDE BECAUSE INMATE HAINES WAS DENIED HER DUE PROCESS RIGHT OF FACE-TO-FACE CROSS-EXAMINATION AND CONFRONTATION.

A. DUE PROCESS WAS DENIED BECAUSE THE DHO DID NOT EXPLAIN WHY THE REQUEST TO CROSS-EXAMINE WITNESSES INV[ESTIGATOR] CORA AND INMATE BUCKNER WAS DENIED.

B. THE FAILURE OF THE DHO TO ALLOW FACE-TO-FACE VERBAL CROSS-EXAMINATION VIOLATED DUE PROCESS REQUIREMENTS.

POINT II

THE SEXUAL HARASSMENT DISCIPLINARY INFRACTION AT N.J.A.C. 1OA:4-4.1(a)[(3)(iv)]AS APPLIED IN THIS CASE IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD AND VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO FREE SPEECH.

Haines raises the following contentions in her reply brief:

POINT I

RESPONDENTS' ARGUMENT THAT APPELLANT WAS NEVER OFFERED CONFRONTATION/CROSS-EXAMINATION AT THE HEARING IS INCORRECT.

6

POINT II

POINT TWO: APPELLANT'S ARGUMENT THAT N.J.A.C.10[A]:4-4.1(a)[(3)(iv)] IS UNCONSTITUTUIONALLY VAGUE IS VALID.

II.

The scope of our review is narrow. As a general matter, we will disturb an agency's adjudicatory decision only upon a finding that the decision is "arbitrary, capricious or unreasonable," or is unsupported "by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80, (1980) (citing Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)).

Our deference to the adjudicatory decisions made by the DOC is especially appropriate in view of that agency's important mission to safeguard prison safety and security. See Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238-39 (App. Div. 2019) (cautioning that a reviewing court should "not substitute its own judgment for the agency's. . . ."). In Blanchard, we emphasized that "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Id. at 238 (quoting Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999)).

III.

We first address Haines's argument her due process rights were violated because she was denied the right to confrontation and cross-examination. Prison disciplinary hearings are "not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." Avant v. Clifford, 67 N.J. 496, 522 (1975) (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). Prisoners are nonetheless entitled to certain procedural protections before being subjected to disciplinary sanctions. Blanchard, 461 N.J. Super. at 240-41.

N.J.A.C. 10A:4-9.14(a) provides:

> The opportunity for confrontation and cross-examination of the accuser(s) and/or the State's witness(es), if requested, shall be provided to the inmate or counsel substitute in such instances where the [DHO] or Adjustment Committee deems it necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved.

"[U]nder the New Jersey Constitution, cross-examination and confrontation must be available to the inmate when 'necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved.'" McDonald v. Pinchak, 139 N.J. 188, 198 (1995) (quoting Avant, 67

N.J. at 530). "That State regulation provides more protection than the federal constitution." Id. at 197.

Haines argues her due process rights were violated because the DHO failed to explain why her request to confront and cross examine two witnesses—Cora and inmate Buckner—were denied. In support of her contention, Haines provides in her appendix a list of questions intended for Cora and Buckner on cross-examination.

However, as we have noted, the record indicates Haines declined her right to cross-examination. Specifically, the adjudication document includes a section that states, "[l]ist of adverse witnesses the inmate requests to confront/cross-examine including those requested through the investigator." After the "[n]ame of adverse witness" line it states in handwritten ink "offered." The line below that, titled "[r]eason" states "declined."

On the next page, the adjudication document states "[i]nmate or counsel substitute acknowledges that the information in lines [one through fifteen] accurately reflects what took place at the inmate disciplinary hearing." Haines's counsel substitute signed this section.

Haines argues in her brief "[i]t is the practice of this DHO to have the charged inmate (or their counsel substitute) sign [l]ine [sixteen] at the outset of

the hearing. . . ." Haines contends, "[t]his questionable practice results in the charged inmate then being vulnerable to any inaccuracies which this DHO might insert into the written adjudication report." She argues the DHO inserted inaccurate information about Haines being offered and declining cross-examination. However, Haines has not provided a certification that the DHO included incorrect information on the form by stating confrontation/cross-examination was offered and declined or that the DHO had the counsel substitute sign the form prior to the form being completed. On this record, we are unpersuaded that Haines's right of cross-examination was violated.

IV.

We next address Haines's contention the sexual harassment disciplinary infraction, N.J.A.C. 10A:4-4.1(a)(3)(iv), is overbroad as applied in this case, violating her constitutional right to free speech. The New Jersey Constitution's free speech clause reads, "[e]very person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press." N.J. Const. art I, ¶ 6. "Because New Jersey courts 'ordinarily interpret our State Constitution's free speech clause to be no more restrictive than the federal free speech clause, . . . "[w]e rely on federal constitutional principles in interpreting

10

the free speech clause of the New Jersey Constitution.'"'" Pryor v. Dep't of Corr., 395 N.J. Super. 471, 489 (App. Div. 2007) (quoting Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 264 (1998)).

In Turner v. Safley, the United States Supreme Court explained, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The Court identified four factors to "determin[e] the reasonableness of the regulation at issue": (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates[,]" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[,]" and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. at 89-90. See In re Rules Adoption Regarding Inmate Mail to Att'ys, 120 N.J. 137, 147 (1990) ("[T]he DOC regulations affecting incoming mail should be analyzed under Turner's reasonableness standard.").

Here, as for factor one, the prohibition set forth in N.J.A.C. 10A:4-4.1(a)(3)(iv) decreases the likelihood of sexual harassment, which leads

to protection of inmates and reduces the likelihood of retaliation. As for factor two, consensual, non-harassing, sexual speech between inmates is allowed. As for factor three, sexual harassment against inmates and guards would be reduced, leading to increased safety. As for factor four, alternatives are limited. Prohibiting sexual harassment is far less burdensome than keeping inmates completely separate or prohibiting interactions more broadly.

Finally, with respect to Haines's overbreadth challenge, she relies on Grayned v. City of Rockford for the proposition "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." 408 U.S. 104, 114 (1972). Haines argues, "[p]rotected conduct includes the right to send and receive correspondence to and from another with whom one has a relationship." But here, Haines was charged with sending unwelcomed, sexually explicit letters, as we explain in Section V.

In sum, we conclude N.J.A.C. 10A:4-4.1(a)(3)(iv) is related to legitimate penological interests and does not violate Haines's free speech rights.

V.

We likewise reject Haines's contention the regulation is unconstitutionally vague as applied in this case. "A statute is unconstitutionally vague as applied if it 'does not with sufficient clarity prohibit the conduct against which it [is]

sought to be enforced.'" Jenkins v. N.J. Dept. of Corr., 412 N.J. Super. 243, 256 (App. Div. 2010) (quoting State v. Cameron, 100 N.J. 586, 593 (1985)). The doctrine's purpose is to give "'fair warning' of prohibited conduct." Id. at 257 (quoting Colten v. Kentucky, 407 U.S. 104, 110 (1972)). "Because the party claiming that a law is vague as applied may only challenge the law as applied to his or her own conduct . . . it is only necessary to give the party 'fair warning' that his or her conduct is prohibited." Ibid. Such warning is sufficient when "'a person of ordinary intelligence may reasonably determine what conduct is prohibited so that he or she may act in conformity with the law.'" Ibid. (quoting State v. Saunders, 302 N.J. Super. 509, 520-21 (App. Div. 1997)).

Applying those principles, the challenged regulation is not vague as applied to Haines's interactions with Buckner. As noted, the regulation prohibits "repeated and/or unwelcomed sexual advances, request for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature." N.J.A.C. 10A:4-4.1(a)(3)(iv). The letters introduced at the disciplinary hearing contained unwelcomed sexual language. The evidence establishes Haines knew the conduct was unwanted, as shown in Haines' letter asking Buckner how she considered her a "threat" and another letter in which Haines stated Buckner did not need others to "bodyguard" her.

In sum, the record shows Haines was afforded the full panoply of rights required by <u>Avant</u>, including the assistance of a counsel substitute for the hearing, N.J.A.C. 10A:4-9.12(a). Substantial evidence supports the finding Haines committed prohibited act .057. N.J.A.C. 10A:4-9.15(a).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3552-21