# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3462-23

M.P.M.,

    Plaintiff-Appellant,

v.

K.S.,

    Defendant-Respondent.

_____

Argued January 12, 2026 – Decided February 10, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1847-24.

Theresa A. Lyons argued the cause for appellant (Lyons & Associates PC, attorneys; Theresa A. Lyons, of counsel and on the briefs).

Jason L. LeBoeuf argued the cause for respondent (Ziegler Law Group LLC, attorneys; Jason L. LeBoeuf and Kristen E. Blucher, of counsel and on the brief).

PER CURIAM

In this appeal, we are asked to determine whether the court erred when it denied plaintiff M.P.M.[1] (father) a final restraining order ("FRO") pursuant to the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35. Plaintiff appeals from the May 28, 2024 order denying his application for a FRO based on allegations that defendant K.S. (mother) surreptitiously planted both a listening device and AirTag[2] in their then-infant child's bag. Defendant admitted to placing an audio recording device and an Airtag in the child's bag to ensure the child's safety, but denied she intended to surveil or track plaintiff. Plaintiff asserts the court erred by: failing to adequately consider defendant's admission that she had placed the listening device(s) in the child's bag to record him during his parenting time; finding that he failed to establish a prima facie case for the predicate acts of harassment, N.J.S.A. 2C:25-19(a)(13), and stalking, N.J.S.A. 2C:25-19(a)(14); and misapplying the two-part standard in Silver v. Silver, 387

_____

[1] We use initials to protect the confidentiality of the parties pursuant to Rule 1:38-3(d)(3).

[2] An AirTag is a tracking device developed and sold by Apple, Inc. The AirTag sends out a Bluetooth signal that can be detected by nearby devices and transmits the location of the AirTag to an online database so the location may ultimately be seen on a map in real-time. AirTag, Apple, Inc., https://www.apple.com/airtag/ (last visited Jan. 20, 2026).

A-3462-23

N.J. Super. 112, 128 (2006). For the reasons that follow, we reverse and remand for a new hearing before a different judge.

I.

Plaintiff and defendant are the parents of a minor child, born in October 2021. The parties never married but resided together until December 2022. Months later, plaintiff filed a complaint in the Family Part seeking joint legal and physical custody, child support, and an order establishing specific parental rights, including a detailed visitation schedule allocating equal time to each party. Since then, the parties have been embroiled in a protracted child custody suit, involving allegations, mostly raised by defendant, challenging plaintiff's parental fitness and seeking to restrict his parenting time.

In April 2024, following a hearing, a Family Part judge entered an order granting the parties joint legal and physical custody of the minor child and established a parenting time schedule, which included detailed pick-up and drop-off times and locations, among other terms.

On April 16, 2024, plaintiff applied for a temporary restraining order ("TRO"), alleging that defendant placed an audio recording device in the child's backpack to surreptitiously record him during his parenting time. The parties' child was two years old at the time.

A-3462-23

On April 26, the court granted the TRO, which prohibited defendant from: returning to plaintiff's home and workplace; having any contact with plaintiff, whether oral, written or otherwise; threatening to stalk, follow or harm plaintiff; stalking or following plaintiff; and possessing any weapons.

On May 6, plaintiff amended his application for a TRO to include harassment after finding a global positioning system ("GPS") tracking device affixed to his car. He also included allegations of prior instances of battery, the occurrence of which respondent denied. Plaintiff sought another amendment to the TRO on May 10, alleging harassment and stalking, asserting he found another AirTag in the child's lunchbox in June or July 2023. The court amended the TRO and scheduled the FRO hearing for May 28, 2024.

On May 28, 2024, plaintiff and defendant testified before the Family Part judge. Plaintiff called defendant as his first witness. Early in her testimony, defendant admitted that on two occasions she placed an audio recording device and an AirTag in a hole in the minor child's backpack and lunchbox to record plaintiff's interaction with the child, and specifically to make sure that the child was not in distress or harmed in any way during plaintiff's parenting time.[3]

---

[3] Defendant denied creating the hole where the device was placed and suggested it was the private investigator she hired who created the hole. The private investigator was not presented as a witness in these proceedings.

Defendant acknowledged that she did not tell plaintiff about the recording device or the AirTag. When questioned about the GPS tracking device that plaintiff discovered on his car, defendant denied authorizing the private investigator she hired to place the tracking device on plaintiff's car but acknowledged that the investigator did place it there. She also testified that she hired the private investigator "[t]o surveil [plaintiff's] purchases at the liquor store," because "[plaintiff] is an alcoholic and he visits the liquor store almost daily" and has 50/50 custody of their child.

Defendant denied committing any prior acts of domestic violence against plaintiff. More particularly, she denied ever punching, choking, kicking or pushing plaintiff. When presented with text messages suggesting she had apologized to plaintiff for committing prior acts of domestic violence—by saying "I'm sorry. Please forgive me for what happened in the past and know that it will never happen again," defendant admitted that the text exchange occurred between her and plaintiff and that she had previously attended anger management class at the request of plaintiff, although she denied that the anger management class was related to the incidents described in the text exchange.

Defendant further denied being told or made aware that plaintiff did not wish to be tracked and denied receiving a letter sent to her former attorney

5

advising that, after plaintiff found the AirTag, "should she ever again try to track [plaintiff's] whereabouts, she will face a TRO." When shown the letter at trial, defendant testified, "I don't remember seeing this letter, per se, but I—I remember speaking to [her counsel] about it," and stated she had no reason to believe it was not the letter sent by plaintiff's counsel.

Plaintiff began his testimony by recalling the prior acts of domestic violence he claimed defendant had perpetrated upon him, including kicking, punching, and slapping him, putting her hands around his throat on multiple occasions. He testified that on one occasion, defendant "squeezed until the point where [he] lost consciousness and [he] passed out into a bush." He explained that defendant had "tackled [him] previously, which is why her height does not matter," referring to defendant's testimony that she was 5 feet 2 inches tall and he was 5 feet 10 inches tall.

At this point, the court interrupted plaintiff, stating "[o]kay. You -- seem to start your examination by being a little riled up. I would – I'd suggest to you that you not go forth so strongly," and "be a little bit more flat in your testimony."

Plaintiff admitted that he never called the police because he does not "like to involve the police in things." He recalled that his only defense was to escape,

"[t]o get away from her, to escape. When she gets angry, she gets violent and when she gets violent, she pursues, and there is no way to get away from her [] until you can actually leave. You can try, but she'll follow you. She follows you up and down the stairs. She followed me outside." He also admitted that he was and still is afraid of defendant. Plaintiff further testified that while they were together, he demanded defendant take an anger management class, which she did. Regarding defendant's placement of the AirTag and audio recording device in the child's possession, plaintiff testified that he felt "violated."

Following the conclusion of the testimony, the court issued an oral decision. The court did not find plaintiff's testimony credible and concluded that plaintiff had failed to establish the elements of the predicate acts of harassment and stalking. The trial court denied plaintiff's counsel's request to replay a portion of defendant's testimony that plaintiff characterized as an admission to prior acts of domestic violence, stating it did not recall such an admission, rejecting counsel's characterization of the testimony, and electing to proceed without replaying the audio of the disputed exchange. As to the predicate act of harassment, the court found the placement of the listening device in the child's backpack did not constitute harassment because it was not done with the purpose to harass plaintiff because defendant had placed the devices

7

there to make sure the child was "not in distress" when with plaintiff. The court noted "the reality of it is [defendant] didn't want him to find it . . . so it's impossible for anyone to prove that she was doing that . . . for the purpose to harass defendant."

As to the predicate act of stalking, the court was unpersuaded that plaintiff demonstrated defendant sought to follow him, as required by the stalking statute. The court was also unpersuaded that defendant knowingly had her private investigator place a tracking device of plaintiff's vehicle. The court stated,

> I think it's pretty obvious that the only purpose that the defendant had was to monitor his whereabout, not to do something to come harm him. And therefore, I don't feel that there is any argument with respect to him reasonably fearing for his safety or the safety of a third party or suffer any emotional distress.

The court also did not find plaintiff's testimony about his emotional distress as a result of defendant's actions to be credible and concluded plaintiff had not established a need for protection going forward under Silver.

Lastly, relying on State v. Saunders, 302 N.J. Super. 509 (App. Div. 1997),[4] the court reasoned that plaintiff had not proven by "a preponderance of

---

[4] Saunders involved an appeal of a conviction under the former stalking statute, which required "evidencing a continuity of purpose which alarms or annoys that person and which serves no legitimate purpose," and "engag[ing] in a course of

[] credible evidence that the [defendant] committed either harassment or stalking" as a predicate act of domestic violence, warranting a FRO. The court entered an order denying the FRO and vacating the TRO.

Plaintiff appealed, arguing the following:

> Issue I: BECAUSE THIS APPEAL INVOLVES AN ERROR OF LAW, THE STANDARD OF REVIEW IS DE NOVO.
>
> Issue II: THE TRIAL COURT ERRED AS A MATTER OF FACT AND LAW WHEN IT PRE-JUDGED, EVEN BEFORE HEARING A SINGLE WORD OF TESTIMONY FROM THE VICTIM [PLAINTIFF], THAT SECRETLY PLANTING A RECORDING DEVICE TO CAPTURE AUDIO IN [PLAINTIFF'S], PRIVATE HOME WITHOUT HIS KNOWLEDGE OR CONSENT DOES NOT CONSTITUTE AN ACT OF DOMESTIC VIOLENCE UNDER THE PREVENTION OF DOMESTIC VIOLENCE ACT.
>
> Issue III: THE TRIAL COURT'S FINDINGS CONFLICT AND COUNFOUND: AMONG OTHER THINGS, IT RULED THAT NO [PLAINTIFF] COULD EVER PROVE A PURPOSE TO HARASS [BECAUSE] DEFENDANT TESTIFIED THAT SHE DIDN'T WANT [PLAINTIFF] TO DISCOVER HER CONDUCT, AND THE COURT REFUSED ALL NOTIONS OF STALKING, EVEN AFTER FINDING THAT DEFENDANT'S INTENTION WAS TO MONITOR [PLAINTIFF'S] WHEREABOUTS.

---

conduct or makes a credible threat with the intent of annoying or placing that person in reasonable fear of death or bodily injury." See 302 N.J. Super. at 509; N.J.S.A. 2C:12-10 (1993) (repealed by L. 1996, c. 39, § 1).

Issue IV: THE TRIAL COURT FAILED TO CONSIDER ALL THE FACTORS UNDER [SILVER V. SILVER, 387 N.J. SUPER. 112 (APP. DIV. 2006)], IGNORED THE PLAIN LANGUAGE MANDATES OF SILVER AND THE STATUTE, AND SHOWED NO UNDERSTANDING OF THE DYNAMICS OF DOMESTIC VIOLENCE.

Issue V: THE TRIAL COURT VIOLATED [PLAINTIFF'S] DUE PROCESS RIGHTS MULTIPLE TIMES.

Issue VI: UPON REVERSAL, THIS COURT EITHER SHOULD ENTER A FINAL RESTRAINING ORDER IN [DEFENDANT'S] FAVOR PURSUANT TO [RULE] 2:10-5, OR AT THE VERY LEAST SHOULD REMAND THE MATTER TO A DIFFERENT JUDGE UNDER [RULE] 1:12-1.

II.

Our review of an FRO is generally limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In matters involving domestic violence, our Supreme Court has held the findings of a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs. Ins. Co., 65 N.J. 474, 484 (1974)); see also N.J. Div. of Child. Prot. & Permanency v. B.P., 257 N.J. 361, 373 (2024). "Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App.

Div. 2013) (quoting Cesare, 154 N.J. at 412-13). Deference is further justified because "the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). However, "a judge's purely legal decisions are subject to . . . de novo review." C.C., 463 N.J. Super. at 429; see also H.E.S. v. J.C.S., 175 N.J. 309, 329-31 (2003).

The entry of an FRO under the PDVA requires the trial court to make certain findings, pursuant to a two-prong analysis. See Silver, 387 N.J. Super. at 125-27. Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

Once a court finds a predicate act under N.J.S.A. 2C:29-19(a) occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021). This determination must be made based on a totality-of-the-circumstances analysis. Silver, 387 N.J. Super. at 126-27; see also N.J.S.A. 2C:25-29(b) (stating "the court shall grant any relief necessary to prevent further

A-3462-23

abuse"). The inquiry is necessarily fact specific, <u>Silver</u>, 387 N.J. Super. at 127-28, requiring consideration of the following factors under N.J.S.A. 2C:25-29(a):

> (1)   The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2)   The existence of immediate danger to person or property;
>
> (3)   The financial circumstances of the plaintiff and defendant;
>
> (4)   The best interests of the victim and any child;
>
> (5)   In determining custody and parenting time the protection of the victim's safety; and
>
> (6)   The existence of a verifiable order of protection from another jurisdiction.
>
> (7)   Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse.
>
> [N.J.S.A. 2C:25-29(a)(1) to (7).]

Effective January 8, 2024, the PDVA was amended to include coercive control among the statutory factors courts must consider when determining whether to issue an FRO. N.J.S.A. 2C:25-29(a)(7). Coercive control is not

12

among the predicate acts enumerated in the PDVA; rather, it is analyzed as part

of the prior history pursuant to the second prong of Silver.  Coercive control

may include, but shall not be limited to:

> (a)    isolating the person from friends, relatives, transportation, medical care, or other source of support;
>
> (b)    depriving the person of basic necessities;
>
> (c)    monitoring the person's movements, communications, daily behavior, finances, economic resources, or access to services;
>
> (d)    compelling the person by force, threat, or intimidation, including, but not limited to, threats based on actual or suspected immigration status;
>
> (e)    threatening to make or making baseless reports to the police, courts, the Division of Child Protection and Permanency (DCPP) within the Department of Children and Families, the Board of Social Services, Immigration and Customs Enforcement (ICE), or other parties;
>
> (f)    threatening to harm or kill the individual's relative or pet;
>
> (g)    threatening to deny or interfere with an individual's custody or parenting time, other than through enforcement of a valid custody arrangement or court order pursuant to current law including, but not limited to, an order issued pursuant to Title 9 of the Revised Statutes; or
>
> (h)    any other factors or circumstances that the court deems relevant or material.

[Ibid.]

A.

Here, there is no dispute that defendant surreptitiously planted a listening device and an AirTag in the minor child's bags on at least two occasions during plaintiff's parenting time. Defendant admitted as much during her testimony, although she explained that her actions were out of concern for the minor child; not to track plaintiff. Given these undisputed facts, the question before us is whether defendant's explanation is sufficient to conclude she lacked the requisite intent to harass or stalk plaintiff, as the court found.

Plaintiff argues the court erred as a matter of law when it determined that the surreptitious and uncontroverted planting of the audio recording device and AirTag in their child's backpack did not constitute an act of domestic violence based on the predicate acts of harassment or stalking. Plaintiff further argues the court erred by: denying his due process rights when it ignored his counsel's request to play back portions of the record that allegedly contained defendant's admission that in the past she had choked and assaulted him; showing a lack of understanding or insight into the dynamics and cycle of domestic violence; and failing to properly consider all factors under Silver.

14

As to the court's ruling on the predicate act of harassment, plaintiff argues the court erred as a matter of fact and law on the issue of whether plaintiff had established defendant had the purpose to harass him. He contends the court's ruling on this issue "defies logic because both devices were placed in areas [plaintiff] uses often and in which he has an expectation of privacy," and "[l]egally makes no sense because the plain language of the [h]arassment statute specifically includes conduct that is anonymous." Plaintiff further argues, citing State v. Hoffman, 149 N.J. 564, 577 (1997), "the court ignored the fact that '[a] finding of a purpose to harass may be inferred from the evidence presented,' [and] '[c]ommon sense and experience may inform that determination.'" Plaintiff also avers being secretly tracked and recorded is "alarming and annoying especially in one's own home," and where there has been a significant history of physical violence.

To establish the predicate act of harassment,

> "[A] person commits a petty disorderly persons offense if, with purpose to harass another, [the person]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]

. . . .

> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person. . . .

[N.J.S.A. 2C:33-4.]

On this issue, the court found plaintiff failed to prove defendant acted with the requisite purpose to harass him based on defendant's explanation that she could not have intended to harass plaintiff when she hid the recording device and AirTag in the child's bags. The court stated:

> [Defendant] didn't want him to find it. She didn't want [plaintiff] to find the [] device in the backpack, she didn't want him to find the device in the car, <u>so it's impossible for anyone to prove that she was doing . . . any of that for the purpose to harass the [plaintiff]</u>.[5]

[(Emphasis added).]

Guided by the law and our standard of review, we are not persuaded that defendant's explanation why she hid the listening device and AirTag in the child's bags is solely indicative of her claimed purpose to ensure the child's safety. We note that during her testimony, defendant did not dispute that her

---

[5] The court erroneously referred to defendant-respondent, which has been corrected here.

16

former counsel advised her that on finding the first AirTag in the child's bag in June 2023, plaintiff expressed his concerns for his safety because of defendant's "escalating, irrational, and unfounded recent behaviors," and essentially asked defendant to cease and desist any further similar acts. Plaintiff argues that as a result of his letter to defendant, she was well aware of plaintiff's concerns for his safety and his right to seek a TRO, yet she persisted in her conduct.

Under these circumstances and based on our de novo review, we reject the court's findings and legal conclusion that plaintiff did not establish defendant intended to harass him when she planted additional audio recording devices and AirTags in the child's bags. Accordingly, in considering the elements of the predicate act of harassment, we are persuaded the court erred as a matter of law in concluding that plaintiff did not establish defendant's conduct constituted harassment based on "a course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4.

B.

We similarly reject the court's analysis and conclusion that plaintiff failed to establish the predicate act of stalking. Plaintiff maintains "defendant's conduct also falls squarely within the plain language of the [s]talking statute

because she 'maintained a physical proximity to [plaintiff] directly, indirectly, or through third parties, by any action, method, device or means, monitoring, observing, surveilling.'" (Emphasis omitted) (paraphrasing N.J.S.A. 2C:12-10(a)(1)). Plaintiff avers the court's finding on stalking is more "perplexing" given the court's finding that defendant's express purpose 'was to monitor [his] whereabouts.'" The stalking statute reads:

> A person is guilty of stalking, . . . if [the person] purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress.
>
> [N.J.S.A. 2C:12-10(b).]

"Course of conduct" for stalking is defined as:

> [R]epeatedly[6] maintaining <u>a visual or physical proximity to a person; directly, indirectly, or through third parties, by any action, method, device, or means, following, monitoring, observing, surveilling,</u> threatening, or communicating to or about, a person, or interfering with a person's property.
>
> [N.J.S.A. 2C:12-10(a)(1) (emphasis added).]

Guided by the above standards and legal principles, we reject the court's analysis and conclusion plaintiff failed to establish the predicate act of stalking

---

[6] "'Repeatedly' means on two or more occasions." N.J.S.A. 2C:12-10(a)(2).

based primarily on the court's finding that plaintiff's testimony lacked credibility. In reaching this conclusion, we take the rare step of rejecting the court's credibility findings—with respect to plaintiff's testimony—because in our view, the court's findings are not supported by the record. See State v. Locurto, 157 N.J. 463, 474 (1999).

Plaintiff's testimony regarding defendant's repeated attempts to record and track him, notwithstanding defendant's explanation she intended to track the child, demonstrates that defendant "purposefully or knowingly engag[ed] in a course of conduct directed at [plaintiff] that would cause a reasonable person to fear for his safety . . . or suffer other emotional distress." N.J.S.A. 2C:12-10(b). We reach this determination based on the evidence adduced at trial demonstrating that following the conclusion of their relationship and in the exchange of custody of their minor child, a reasonable person would be in fear for his or her safety by repeatedly finding surreptitiously placed recording and tracking devices in their child's bags. Further, we note that "one sufficiently egregious action [can] constitute domestic violence under the [PDVA], even with no history of abuse between the parties . . . . " See Cesare, 154 N.J. at 402. "[T]he need for an order of protection upon the commission of a predicate act of 'domestic violence' . . . may arise even in the absence of a pattern where there

is 'one sufficiently egregious action.'" Silver, 387 N.J. Super. at 128 (quoting Cesare, 154 N.J. at 402).

Here, it is undisputed that defendant engaged in the same conduct on at least three separate occasions, resulting in repeated efforts to maintain proximity to plaintiff by the use of tracking and surveilling devices, even after being warned against continuing this conduct after the first instance.

Further, we are convinced the court's analysis reflects a misstatement and misapplication of the stalking statute, which led to the erroneous conclusion that defendant lacked the requisite purpose to harass plaintiff merely because she did not want plaintiff to know he was being tracked. On this point, the court also erroneously substituted the statute's "objectively reasonable person" standard by focusing exclusively on whether plaintiff feared for his safety. The court stated:

> [T]he part that I think is significant is under [s]ubsection (b) where we talk about -- a reasonable person fearing for their safety, and when I hear [the] plaintiff's response as to why he's fearful of the defendant, I don't find it to be very credible and it certainly doesn't indicate that he is legitimately in fear for his safety. . . . He certainly tried to give an indication that he was distressed emotionally, but I'm – I'm not buying that; I don't think that that was credible at all.

The court also misinterpreted the statute by focusing on defendant's alleged subjective intent in planting the devices, which she maintains was to

20

ensure the child was safe, rather than to track plaintiff. This same issue was addressed in State v. Gandhi, where our Supreme Court held:

> we do not discern a legislative intent to limit the reach of the anti-stalking statute to a stalker-defendant who purposefully intended or knew that his behavior would cause a reasonable person to fear bodily injury or death. Rather, we read the offense to proscribe a defendant from engaging in a course of repeated stalking conduct that would cause such fear in an objectively reasonable person. We view the statute's course-of-conduct focus to be on the [alleged surveillant's] conduct and what that conduct would cause a reasonable victim to feel, not on what the [surveillant] intended.
>
> [201 N.J. 161, 170 (2010).]

Plaintiff testified that he felt "[v]iolated and scared" when he learned of the recording devices that were planted in the child's bags and he recalled the first time he found an AirTag in their child's lunchbox in June 2023 and directed his attorney to send a letter to defendant's counsel to advise defendant not to track him anymore and if she did, it would be considered stalking or harassment.

Whether defendant intended plaintiff to be in fear of his safety or experience emotional distress is irrelevant in determining the predicate act of stalking. Rather, the issue is whether defendant purposefully engaged in a course of conduct, and separately, whether that conduct would cause "a

21

reasonable person," not necessarily plaintiff, "to fear for his safety or the safety of a third person or suffer other emotional distress."  N.J.S.A. 2C:12-10(b).

Moreover, the court's finding there was no "method that was used to follow or monitor or observe . . . surveil or threaten or communicate," is also contrary to Gandhi.  See id. at 185 (noting the stalking statute was broadened in 2009 "to cover stalking by means of new technology, such as situations where the stalker tracks the victim through the use of a [GPS] attached to the victim's car.").  We are therefore satisfied that defendant's admitted use of an AirTag and audio recording device planted in the child's bags, and the discovery of a separate tracking device on plaintiff's personal vehicle, is precisely the type of technology contemplated by the statute, the discovery of which would cause a reasonable person to fear for their safety.  In sum, the court misapplied the law and erred in its analysis, warranting reversal.

Because we conclude the court erred in its analysis of the predicate acts of harassment and stalking and its conclusion plaintiff did not satisfy either standard, we need not address plaintiff's remaining arguments he satisfied prong two of Silver:  whether a restraining order is necessary to protect plaintiff from future acts of domestic violence.

Accordingly, based on our de novo standard of review, we reverse and remand for a new and expeditious FRO hearing before a different judge. See R.L. v. Voytac, 199 N.J. 285, 306 (2009) (holding when a "trial court previously made credibility findings, [it is] deem[ed] [] appropriate that the matter be assigned to a different trial court."). The TRO is reinstated in the meantime.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division